Jesse Hindman, Cal Bar No. 222935
**HINDMAN APC**
402 W. Broadway, Suite 2700
San Diego, CA 92101
Telephone: (619) 255-4078
Facsimile: (619) 230-1839
jesse@hindmanapc.com

Charles B. Walker, Texas Bar No. 00794808
*pro hac vice* application forthcoming
William D. Sprott, Texas Bar No. 24093192
*pro hac vice* application forthcoming
**Norton Rose Fulbright US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
charles.walker@nortonrosefulbright.com
will.sprott@nortonrosefulbright.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>BLUE DOT SOLUTIONS, INC.,<br><br>  Defendant. | Civil Action No. **'17CV1239 L    KSC**<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT**<br><br>**Demand for Jury Trial** |

    Plaintiff Omnitracs contracted with Defendant Blue Dot to develop a software application for its fleet management system. Omnitracs later assisted Blue Dot in the development of another software application for integration with the Omnitracs system. Blue Dot then used the confidential Omnitracs information gained from both projects to develop a competing fleet management system. Therefore, for its original

complaint for misappropriation, breach of contract, tortious interference, misrepresentation, and unfair competition, Omnitracs alleges as follows:

## THE PARTIES

1. Plaintiff Omnitracs, LLC is a Delaware limited liability company that maintains a principal place of business at 717 N. Harwood Street, Dallas, Texas, 75201.

2. On information and belief, Defendant Blue Dot Solutions, LLC is a Colorado corporation that maintains its principal place of business at 1120 Lincoln St., Suite 1507, Denver Colorado 80203 and may be served through its registered agent Mick Milnark at 1120 Lincoln St., Suite 1507, Denver, Colorado 80203.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Omnitracs' claims arise under the laws of the United States, 28 U.S.C. §1332, as the parties are diverse, and 18 U.S.C. § 1836(c), which provides that district courts have original jurisdiction over any civil action brought under this section. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. On information and belief, Blue Dot is subject to personal jurisdiction in this district because Blue Dot's actions in the State of California give rise to the causes of action in this case and Blue Dot has purposefully availed itself of the forum by conducting activities within the State of California.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in the judicial district.

6. Furthermore, Blue Dot has consented to the jurisdiction of this Court and agreed that venue is proper in this Court in a Master Services Agreement entered into by the parties on February 8, 2011.

## FACTUAL BACKGROUND

**A.  Plaintiff Omnitracs**

- 2 -
PLAINTIFF'S ORIGINAL COMPLAINT

7. Omnitracs is an industry leader and global pioneer of fleet management solutions serving the transportation sector. Omnitracs provides innovative software and technology to help transportation companies of all sizes improve their productivity, reliability, routing, safety, and compliance of their transportation assets. Omnitracs develops and provides to its clients a comprehensive portfolio of fleet management solutions including integrated software and analytics platforms.

8. Omnitracs was formerly known as the Enterprise Solutions Division of Qualcomm Inc., and it was spun off as a separate entity in 2013. For more than 25 years, Omnitracs (and its predecessor division within Qualcomm) has been a leader in fleet management and telematics.

9. For more than two decades, Omnitracs has provided its clients with fleet management platforms. Introduced in the late 1980s, the first Omnitracs system was an early satellite-based fleet management system. With the rise of cellular communication, Omnitracs launched OmniExpress in the late 1990s, which leveraged cell phone networks to facilitate automatic GPS tracking, two-way messaging, and seamless integration with back-office applications while increasing productivity and security of drivers, vehicles, equipment, and cargo. In 2006, Omnitracs launched the MCP 100 which built and improved upon the technology of the legacy Omnitracs and OmniExpress systems. In March 2009, Omnitracs launched the MCP 200 as the next step of its industry leading fleet management systems. In 2016, Omnitracs released its Intelligent Vehicle Gateway (IVG) as the latest generation of its fleet management solutions. IVG supports a suite of Omnitracs applications that help fleets reduce costs, operate efficiently, and stay compliant. Each successive Omnitracs platform built upon the knowledge gained from and technology developed for previous Omnitracs platforms.

10. As part of these platforms, Omnitracs has developed its own Application Programming Interfaces (APIs). APIs are a set of clearly defined methods of communication between software components. Programmers use APIs as the

building blocks for developing software applications. For example, a programmer may use defined API protocols for copying, moving, or saving information within the platform without having to understand or recreate the function in the application.

11. Omnitracs has developed and refined its APIs, called OmniAPIs, over decades through each of its fleet management platforms. OmniAPIs allow Omnitracs and its contracted programmers to develop software applications for the Omnitracs fleet management platforms. Omnitracs maintains OmniAPIs as confidential by strictly limiting access to OmniAPIs to only those with an obligation of confidentiality to Omnitracs.

12. Through these fleet management systems with a suite of software applications, Omnitracs provides its clients with commercial fleet management solutions to facilitate regulatory compliance, maximize productivity by using data and analytics, increase fleet performance, and increase safety and security for clients' fleets and drivers.

13. One such client of Omnitracs is Swift Transportation. A longtime client of Omnitracs, in January 2015 Swift signed a 5-year contract renewal with Omnitracs, extending its contract with Omnitracs through January 2020.

**B.     Defendant Blue Dot**

14. Blue Dot develops enterprise mobile software for companies with transportation fleets. Blue Dot focuses on increasing driver productivity with "out-of-cab" mobile applications that provide drivers with some of the information and functionality of a fleet management system while outside the truck cab. Such "out-of-cab" solutions include software on a third-party handheld device that interfaces with the in-cab fleet management system.

15. Omnitracs was an ideal partner for Blue Dot to use to launch its mobile solutions because Omnitracs is the industry leader in fleet management solutions with its extensive client base and established brand.

**C.     Omnitracs contracts with Blue Dot to develop Extended Productivity**

16. Omnitracs engaged Blue Dot to develop a suite of out-of-cab software applications that Omnitracs calls Extended Productivity. Extended Productivity works on a tablet or other mobile device to allow the driver to perform proof of delivery activities, including signature capture, barcode scanning, and document imagining, while outside the cab of the truck. Extended Productivity leverages information from the Omnitracs system through an interface defined by the OmniAPI.

17. As part of the engagement, Qualcomm and Blue Dot entered into a Master Services Agreement ("MSA") on February 8, 2011. Qualcomm subsequently assigned the MSA to Omnitracs in 2013. Omnitracs and Blue Dot have subsequently continued to operate under the MSA.

18. Under the MSA, Blue Dot agrees to treat as confidential certain information provided by Omnitracs, including technical information related to its operations and intellectual property, and agrees to limit the use of Omnitracs confidential information to the extent necessary to perform services under the MSA. Blue Dot also assigned all rights in its work product created under the MSA to Omnitracs and agreed not to disclose the work product to any third parties.

19. Blue Dot operated under the MSA while developing the original Extended Productivity application and also while customizing the application for certain Omnitracs customers.

20. Pursuant to the MSA, Omnitracs provided Blue Dot with technical support and confidential information, including OmniAPI specifications, technical documentation, software, and subject matter experts. Omnitracs routinely met with Blue Dot for technical collaboration to explain the details of the Omnitracs system and OmniAPI for the development of Extended Productivity and its customization for certain Omnitracs customers. The information shared with Blue Dot was confidential information protected from disclosure under the MSA and not generally known to the public.

**D.     Omnitracs works with Blue Dot on workflow application for Swift**

21.     Starting in late 2014, Omnitracs coordinated with Blue Dot to implement Extended Productivity and additional out-of-cab workflow functionalities for the Omnitracs MCP 200 equipment at Swift.  Omnitracs originally introduced Blue Dot to Swift as part of an effort to implement Extended Productivity at Swift. Swift eventually contracted directly with Blue Dot to implement Extended Productivity and develop a new workflow application that would allow drivers to access and use additional information outside the cab.  Specifically, the workflow application provided the driver with information about the engine, geographical location, and hours of service on a tablet outside of the cab.  Omnitracs already provided Swift with applications that accessed the same information, but from Omnitracs MCP 200 displays inside the cab.

22.     Omnitracs agreed to work with Blue Dot in the development of the workflow application because, as represented to Omnitracs, the new applications depended on data pulled from Omnitracs equipment to operate.  Specifically, the new applications pulled engine, location, and hours of service information directly from the MCP 200 system using the OmniAPI interface.

23.     Omnitracs believed working with Blue Dot on the workflow application gave Omnitracs a competitive advantage in supplying Swift with the next generation of fleet management systems because its IVG system, which also used OmniAPIs, would be the only available option that would continue to work with the new out-of-cab workflow applications.

24.     Blue Dot encouraged Omnitracs to assist with the Swift workflow project. Mick Milnark of Blue Dot informed Omnitracs in late 2015 that Swift had contracted Blue Dot to develop a workflow application.  Mick Milnark also advised that Swift was evaluating other options to develop a workflow application operating on tablets and third party equipment.  Mick Milnark represented that Blue Dot preferred to partner with Omnitracs to encourage Omnitracs to provide technical

assistance on the Blue Dot workflow project.  Mick Milnark continued to tell Omnitracs through at least April 2016 that Blue Dot was not assisting Swift in the development of third party equipment that would replace the MCP 200.

25.     On information and belief, Mick Milnark knew that Blue Dot intended to develop a fleet management system to compete with the Omnitracs fleet management systems at the time he made the contrary statements to Omnitracs.

26.     In reliance on the representations made by Blue Dot, Omnitracs agreed to provide technical support in the development of the Blue Dot workflow application for Swift.  Omnitracs would not have provided Blue Dot with technical assistance or confidential information if Omnitracs knew that Blue Dot intended to design the workflow application for use with competing equipment or sell the application to other customers besides Swift.

27.     Omnitracs provided Blue Dot with confidential information for the implementation of Extended Productivity and the development of a workflow application for Swift.  Omnitracs provided Blue Dot continuing access to Omnitracs software development kits (SDKs), OmniAPIs, and a variety of Omnitracs technical documentation.  Omnitracs regularly discussed technical aspects of its MCP 200 system, such as the data provided from various systems and the timing of receipt of that data, necessary to development of a workflow application.  Omnitracs even enhanced its OmniAPIs to assist Blue Dot in the development of its workflow application.

28.     Omnitracs maintains the information shared with Blue Dot as confidential through internal policies and security systems and by restricting access to only those with an obligation of confidentiality to Omnitracs or its predecessor.  The information provided to Blue Dot during the Swift project is protected by the confidentiality provisions of the MSA and is not generally known to the public.

29.     Even after Omnitracs provided Blue Dot with the technical support and confidential information necessary to develop the workflow application for Swift,

Blue Dot continued to assure Omnitracs that it was not working to replace the MCP 200 with third party equipment. In November 2016, at the initial demonstration of the Blue Dot workflow application, Mick Milnark explained that Blue Dot did not intend to change the current use of the MCP 200 in its workflow application. Omnitracs later learned that these assurances were incorrect.

**E. Blue Dot uses Omnitracs information to develop a workflow application integrated with third party equipment and software to replace MCP 200**

30. Upon information and belief, and contrary to Blue Dot's prior assurances, Blue Dot has actively worked, and continues to actively work, to develop and implement an unauthorized fleet management system using Omnitracs' confidential information. The Blue Dot system includes a third-party router used to replace the MCP 200 equipment that works with the Blue Dot workflow application operated on a tablet. The Blue Dot system also integrates with third party navigation and hour of service applications to replace additional functions of the MCP 200 system.

31. Upon information and belief, Blue Dot has used technical information gained from Omnitracs' confidential documentation and regular technical meetings between the parties, and shares Omnitracs' confidential information with third party equipment suppliers and application providers, all in violation of the MSA, in order to develop the unauthorized Blue Dot system to replace the MCP 200.

32. Upon information and belief, Blue Dot would not have been able to develop its workflow application, integrate with a third party router, or integrate with third party applications without Omnitracs confidential information, including details about the OmniAPIs; identification, timing, and format of data gathered and used by the MCP 200; and explanations of the interface between the equipment and the software of the MCP 200.

33. Upon information and belief, Blue Dot continues to offer its replacement system and accompanying replacement software to multiple Omnitracs

customers previously introduced to Blue Dot by Omnitracs.

34. Upon information and belief, in June 2016, Blue Dot had installed ten third party routers in Swift vehicles and installed at least two routers in Swift's offices for testing purposes. The third party routers were later removed when they did not met Swift's requirements for gathering engine data. In February 2017, Blue Dot installed additional third party routers in Swift vehicles for testing. Despite these activities, Blue Dot has denied that it was working to develop equipment that would replace the MCP 200.

35. Upon information and belief, Blue Dot has worked with two Omnitracs partners, Drivewyze and ALK, to integrate their respective weigh station bypass and navigation applications with the Blue Dot replacement system, but while improperly using confidential Omnitracs information about MCP 200 interfaces with its navigation and hour of service applications.

36. Upon information and belief, Blue Dot has improperly shared confidential information of Omnitracs, including information about Omnitracs APIs, with third parties for the specific purpose of developing a replacement for Omnitracs systems. Specifically, upon information and belief, Blue Dot shared OmniAPI information with third party hardware manufacturers, including Cisco, to develop a system to replace the Omnitracs MCP 200.

37. Blue Dot has damaged Omnitracs through its improper development of a fleet management system that competes with Omnitracs' MCP 200, IVG, and other fleet management systems. The competing system reduces the ability of Omnitracs to upgrade Swift and other customers to its next generation IVG platform. The competing system also reduces the ability of Omnitracs to renew its contract with Swift and other customers for its fleet management applications. The competing system has caused Omnitracs to use additional resources to maintain current and future relationships with Swift, other customers, and partners.

- 9 -
PLAINTIFF'S ORIGINAL COMPLAINT

## FIRST CLAIM FOR RELIEF

## MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. § 1836, et seq.)

38. Omnitracs incorporates by reference all previous factual allegations.

39. Omnitracs owns all right, title and interest in various trade secrets related to fleet management systems, including the information contained in Omnitracs' APIs, SDKs, and technical documentation for its MCP 200 and predecessor systems. Omnitracs and its predecessor developed these trade secrets over decades with an extensive investment of labor, skill, and money and knowledge gained from experiences with customers.

40. Omnitracs derives a competitive advantage and independent economic value, both actual and potential, from its trade secrets because they are not generally known to the public or to others who can obtain economic value from their disclosure or use. Omnitracs has become an industry leader in fleet management systems based in part on it trade secrets.

41. Omnitracs protects the confidentiality of its trade secrets through reasonable efforts to maintain their secrecy including without limitation through internal policies and security systems and by restricting access to only those with an obligation of confidentiality to Omnitracs or its predecessor.

42. Omnitracs disclosed its trade secrets to Blue Dot under circumstances giving rise to an obligation not to use or disclose the trade secrets to the detriment of Omnitracs, including the obligations created by the MSA.

43. Blue Dot wrongfully acquired trade secrets from Omnitracs by using improper means to acquire their knowledge, including breach of its obligations of confidentiality and fraudulent misrepresentations about the intended use of Omnitracs confidential information. Blue Dot misappropriated and wrongfully used Omnitracs' trade secrets without Omnitracs' knowledge or consent to develop a competing fleet management system in violation of an obligation to maintain the secrecy and limit the use of the trade secrets.

44. Blue Dot has gained a competitive advantage and other unjust enrichments through the commercialization of a competing fleet management system developed through the misuse of Omnitracs' trade secrets.

45. The misappropriation by Blue Dot has been willful and malicious.

46. Omnitracs has suffered damages as a result of the misappropriation.

## SECOND CLAIM FOR RELIEF
## MISAPPROPRIATION OF TRADE SECRETS
## (Cal. Civil Code § § 3426-3426.11)

47. Omnitracs incorporates by references all previous factual allegations, including all allegations for misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.

48. For the same reasons alleged for the violation of Defend Trade Secrets, Blue Dot has misappropriated trade secrets under the California Uniform Trade Secrets Act, Cal. Civil Code § § 3426-3426.11.

## THIRD CLAIM FOR RELIEF
## BREACH OF CONTRACT

49. Omnitracs incorporates by reference all previous factual allegations.

50. Blue Dot signed the MSA with Omnitracs' predecessor that requires Blue Dot to maintain the confidentiality of Omnitracs information and limits the use of Omnitracs confidential information to the extent necessary to perform services under the MSA.

51. Blue Dot breached the MSA through the use of Omnitracs' confidential information to develop a fleet management workflow application integrated with a third party router and third party software without the consent of Omnitracs. Blue Dot also breached the MSA by disclosing Omnitracs confidential information to third party router suppliers and third party application providers for integration with the Blue Dot workflow application.

52. Omnitracs has performed all of its conditions, covenants, and promises

under the MSA.

53.  As a proximate result of Blue Dot's breach of the MSA, Omnitracs has been and will be further damaged, and Blue Dot has been unjustly enriched, in an amount subject to proof at trial.

54.  Pursuant to § 18(e) of the MSA, Blue Dot agrees to pay the attorney fees of Omnitracs as the prevailing party in this breach of contract claim.

## FOURTH CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

55.  Omnitracs incorporates by reference all previous factual allegations.

56.  Omnitracs has a valid agreement with Swift Transportation for the performance of certain fleet management services and an ongoing understanding of a likelihood of renewal of the agreement at its expiration in January 2020. Additionally, Omnitracs has valid agreements with Drivewyze and ALK and an ongoing understanding of a likelihood of renewal of those agreements upon expiration.

57.  Omnitracs receives economic benefit from its relationships with Swift, Drivewyze, and ALK.

58.  Blue Dot had knowledge of the economic relationship between Omnitracs and Swift Transportation, Drivewyze, and ALK, as well as the valid agreements and renewal opportunities.

59.  Without authorization and in violation of its agreements with Omnitracs, Blue Dot wrongfully used Omnitracs confidential information to develop an unauthorized competing fleet management platform. Blue Dot intentionally attempted to persuade Swift Transportation to adopt the competing Blue Dot system in replacement of the existing Omnitracs systems. Blue Dot wrongfully and intentionally attempted to persuade Drivewyze and ALK to sell their services directly to Omnitracs' customers rather than through Omnitracs under their agreements with

1  Omnitracs.

2  60. As a result, Blue Dot disrupted the ongoing and potential future
3  economic relationship between Omnitracs and Swift Transportation, Drivewyze, and
4  ALK.

5  61. As a proximate result of Blue Dot's intentional acts to disrupt the
6  economic relationship between Omnitracs and Swift Transportation, Drivewyze, and
7  ALK, Omnitracs has been and will be further damaged, and Blue Dot has been
8  unjustly enriched, in an amount subject to proof at trial.

### FIFTH CLAIM FOR RELIEF

### INTENTIONAL INFERENCE WITH CONTRACTUAL RELATIONS

11  62. Omnitracs incorporates by reference all previous factual allegations.

12  63. Omnitracs has a valid agreement with Swift Transportation for the
13  performance of certain fleet management services and an ongoing understanding of
14  a likelihood of renewal of the agreement at its expiration in January 2020.
15  Additionally, Omnitracs has valid agreements with Drivewyze and ALK and an
16  ongoing understanding of a likelihood of renewal of those agreements upon
17  expiration.

18  64. Omnitracs receives economic benefit from its agreements with Swift,
19  Drivewyze, and ALK.

20  65. Blue Dot had knowledge of the contractual relationship between
21  Omnitracs and Swift Transportation, Drivewyze, and ALK.

22  66. Without authorization and in violation of its agreements with Omnitracs,
23  Blue Dot wrongfully used Omnitracs confidential information to develop a
24  competing fleet management platform. Blue Dot intentionally attempted to persuade
25  Swift Transportation to adopt the competing Blue Dot system in replacement of the
26  existing Omnitracs systems. Blue Dot wrongfully and intentionally attempted to
27  persuade Drivewyze and ALK to sell their services directly to Omnitracs' customers
28  rather than through Omnitracs under their agreements with Omnitracs.

67. As a result, Blue Dot disrupted the contractual relationship between Omnitracs and Swift Transportation, Drivewyze, and ALK.

68. As a proximate result of Blue Dot's intentional acts to disrupt the contractual relationship between Omnitracs and Swift Transportation, Drivewyze, and ALK, Omnitracs has been and will be further damaged, and Blue Dot has been unjustly enriched, in an amount subject to proof at trial.

## SIXTH CLAIM FOR RELIEF
## INTENTIONAL MISREPRESENTATION

69. Omnitracs incorporates by reference all previous factual allegations.

70. Blue Dot falsely represented as true that Blue Dot did not intend to assist with the development of a system that would replace the existing Omnitracs fleet management system.

71. Blue Dot knew the representation was false when the representation was made.

72. Blue Dot intended that Omnitracs rely on the misrepresentation to entice Omnitracs to provide technical support and confidential information necessary for Blue Dot to develop a workflow application for Swift.

73. Omnitracs reasonably relied on Blue Dot's misrepresentation causing Omnitracs to continue to supply Blue Dot with confidential information and trade secrets.

74. As a proximate result of Blue Dot's misrepresentation, Omnitracs has been and will be further damaged, and Blue Dot has been unjustly enriched, in an amount subject to proof at trial.

## SEVENTH CLAIM FOR RELIEF
## UNFAIR COMPETITION
## (Cal. Bus. & Prof. Code § 17200)

75. Omnitracs incorporates by reference all previous factual allegations.

76. Blue Dot unfairly competed with Omnitracs by making false and

misleading statements regarding Blue Dot's continuous and ongoing attempts to develop a system to replace Omnitracs' systems.

77. Blue Dot made these false and misleading statements to induce Omnitracs to divulge additional confidential information which Blue Dot intended to use to develop its unauthorized, competing system.

78. Blue Dot's false and misleading statements significantly threaten and harm competition in the industry.

79. Omnitracs reasonably relied on Blue Dot's false and misleading statements causing Omnitracs to continue to supply Blue Dot with confidential information and trade secrets.

80. As a proximate result of Blue Dot's unfair business practices, Omnitracs has been and will be further economically damaged, and Blue Dot has been unjustly enriched, in an amount subject to proof at trial.

**SUPPORT FOR PRELIMINARY AND PERMANENT INJUNCTION**

81. Omnitracs incorporates by reference all previous factual allegations.

82. Immediate and irreparable harm will result from Blue Dot's continued unauthorized disclosure of Omnitracs confidential information and Blue Dot's unauthorized use of Omnitracs confidential information and trade secrets.

83. Because Omnitracs' remedy at law is inadequate, Omnitracs seeks preliminary and permanent injunctive relief. Omnitracs is threatened with losing its proprietary and confidential information to third parties, its competitive advantage, and its trade secrets and goodwill, in amounts which may be impossible to determine, unless Blue Dot is enjoined and restrained by order of the Court.

84. Additionally, Omnitracs seeks preliminary and permanent injunctive relief preventing Blue Dot from profiting from their intentional interference with Omnitracs' business relationships and from their unfair business practices.

85. Pursuant to § 18(c) of the MSA, Blue Dot agreed that injunctive relief is an appropriate remedy as a result of Blue Dot's breach of the MSA.

86. Public policy supports granting preliminary and permanent injunctive relief to prevent further misappropriation of trade secrets, breach of contract, tortious interference, and unfair business practices.

## JURY DEMAND

87. Omnitracs demands a jury trial in this matter.

## PRAYER FOR RELIEF

Omnitracs requests:

a. a preliminary and permanent injunction prohibiting Blue Dot from using Omnitracs' confidential information, developing or marketing its fleet management system, and interfering with the contracts and relationships between Omnitracs and Swift Transportation, Drivewyze, and ALK;

b. actual damages;

c. punitive damages;

d. exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C);

e. attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D), Cal. Civ. Code § 3426.4, Cal. Civ. Code § 1717, and § 18(e) of the Master Services Agreement;

f. pre-judgment and post-judgment interest;

g. all costs of suit; and

h. such other and further relief as the Court may deem just and proper.

Dated: June 19, 2017

By */s/ Jesse Hindman*
JESSE HINDMAN
jesse@hindmanapc.com
Attorney for Plaintiff